# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

ANGELA GIBSON HART a/k/a ) 
ANGELA GIBSON, an individual, )
)
    **Plaintiff,** )
)
v. ) Civil Action No.:
)
ADMIN RECOVERY, LLC, a )
corporation; )
)
    **Defendant.** )

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, in the above styled cause, and for Plaintiff's Complaint against the Defendant, states as follows:

1. This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and out of state law violations and out of the invasions of Plaintiff's personal and financial privacy by the Defendant and its agents in its illegal efforts to collect a consumer debt from Plaintiff.

## JURISDICTION

2. Personal jurisdiction exists over the Defendant as it has the necessary minimum contacts with the State of Alabama and this suit arises out of its specific contacts with Plaintiff in Alabama.

3. Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332).

## VENUE

4. Venue is proper as Plaintiff lives in this judicial district, the events took place in this judicial district, the Defendant Admin Recovery, LLC does business in this judicial district.

## PARTIES

5. Plaintiff Angela Gibson Hart a/k/a Angela Gibson (hereinafter "Plaintiff") is a natural person who is a resident of this judicial district, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

6. Defendant Admin Recovery, LLC, ("Defendant" or "Admin Recovery") is a foreign debt collection firm that engages in the business of debt collection. It conducts business in Alabama. Its principal place of business is the State of New York and it is incorporated in New York.

## FACTUAL ALLEGATIONS

7. Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

8. The debt relates to a Wells Fargo financed mattress for Plaintiff's home.

9. Supposedly, Defendant Admin Recovery purchased or was assigned or otherwise was collecting the debt and began harassing collection activities against Plaintiff beginning on November 30, 2011.

10. Defendant Admin Recovery's account number is 5774421931041173 and its file number is 246398.

11. Defendant Admin Recovery had Plaintiff's location information when it began collection activities against Plaintiff.

12. The collection calls and other collection activities by Defendant Admin Recovery were deceptive, abusive, harassing, and in violation of the FDCPA and Alabama state law.

### December 2011 Call From Admin Recovery to Mary Gibson

13. Defendant Admin Recovery called Plaintiff's mother, Mary Gibson.

14. Defendant Admin Recovery asked Mary Gibson if Plaintiff was present.

15. Mary Gibson told Defendant Admin Recovery that Plaintiff was not there.

16. Defendant Admin Recovery asked if Mary Gibson knew where Defendant Admin Recovery could get in touch with Plaintiff.

17. Mary Gibson refused to help Defendant Admin Recovery.

18. Defendant Admin Recovery then said that Mary Gibson should give a message to Plaintiff and Mary Gibson agreed.

19. Defendant Admin Recovery told Mary Gibson the call was to make arrangements to repossess a bed.

20. Mary Gibson informed Plaintiff of the call or calls from Defendant Admin Recovery.

21. This was very upsetting and harmful to Plaintiff.

**January 24, 2012, Call From Admin Recovery to Catherine Gibson**

22. Defendant Admin Recovery called Plaintiff's sister-in-law, Catherine Gibson.

23. Defendant Admin Recovery asked Catherine if she was a relative of Plaintiff.

24. Catherine Gibson told Defendant Admin Recovery that she was Plaintiff's sister-in-law.

25. Catherine Gibson asked Defendant Admin Recovery why Defendant Admin Recovery needed to know about Plaintiff.

26. Defendant Admin Recovery responded that Catherine Gibson was an emergency contact for Plaintiff.

27. Defendant Admin Recovery refused to give any more information or explain what the emergency was that Plaintiff had with Defendant Admin Recovery.

28. Defendant Admin Recovery told Catherine Gibson to have Plaintiff call Joe Debolt at 716-635-8460, ext. 260 with a pickup number of 246398.

29. Catherine Gibson was home recovering from having a baby approximately two (2) weeks before and became very worried about Plaintiff.

30. Catherine Gibson began calling Plaintiff but could not reach her by phone.

31. Catherine Gibson then sent a text message to Plaintiff describing the above-referenced information.

32. Plaintiff called Catherine Gibson and told her that she had been teaching class and that is why she did not answer Catherine Gibson's calls.

33. Plaintiff stopped teaching her class and went out in the hallway to talk to Catherine Gibson.

34. Plaintiff assumed due to the number of times that Catherine Gibson had called, that there was an emergency with Catherine Gibson or the baby.

35. Catherine Gibson explained to Plaintiff about the phone call from Defendant Admin Recovery.

36. Plaintiff seemed to Catherine Gibson to be extremely upset and embarrassed.

37. Plaintiff explained to Catherine Gibson what Defendant Admin Recovery had been doing to Plaintiff.

38. Upon hearing how Plaintiff had been treated and understanding how Defendant Admin Recovery used Catherine Gibson, Catherine Gibson became upset and angry as well.

## January 25, 2012 Calls and Fax to Plaintiff's Employer

39. Defendant Admin Recovery sent a fax to Plaintiff's employer on January 25, 2012.

40. The fax contained the name of the Defendant in all caps and bold across the top of the page "**ADMIN RECOVERY, LLC.**"

41. The fax said it was for "Employment Verification for Angela Gibson."

42. It asked Plaintiff's employer to "please confirm that Angela Gibson is employed with your company" and it asked whether she was full-time or part-time and "has employee been given the chance to review this document."

43. This letter was sent by Adam Brown who was listed as the "GM" of Defendant Admin Recovery.

44. Defendant Admin Recovery had previously called Plaintiff's work and had threatened to communicate with Plaintiff's employer to intimidate Plaintiff into paying this debt.

45. Plaintiff was informed by her employer of the above-referenced communications and Plaintiff was extremely embarrassed, scared, humiliated, and angry at what Defendant Admin Recovery had done to Plaintiff.

46. Defendant Admin Recovery knew, at the time it called and sent the fax, that Plaintiff was employed by her employer where she has been employed for over ten (10) years.

6

47. Defendant Admin Recovery had left multiple messages on Plaintiff's work phone number and otherwise knew that Plaintiff worked there.

### Calls Between Defendant and Plaintiff

48. Defendant Admin Recovery communicated on more than one occasion with Plaintiff and threatened, harassed, and lied to Plaintiff in connection with attempting to collect the alleged debt.

49. The harassment, threats, lies, and third party contacts became more than Plaintiff could bear and Plaintiff borrowed the money to settle the alleged debt with Defendant Admin Recovery.

### Impact of Defendants' Harassing Conduct

50. Plaintiff has suffered extreme upset, embarrassment, mental anguish, anxiety, physical injuries and manifestations, as well as other damages.

51. Plaintiff has had her medical conditions worsened by the conduct of the Defendants.

52. Plaintiff has suffered and will suffer past and future emotional distress and financial loss.

### Intent of Admin Recovery in Calling Third Parties

53. Defendant Admin Recovery knew that one of the most effective ways to force a consumer into paying money is to illegally contact third parties.

54. The intent was to threaten and to actually contact third parties.

55. Plaintiff never gave permission or consent to Defendant making third party disclosures.

56. Plaintiff could not have prevented Defendant's illegal third party disclosures.

57. There was no valid reason to contact the third party or parties.

58. Defendant Admin Recovery knows that it is illegal to contact third parties except to seek "location information."

59. Under the FDCPA, location information is limited to three, and only three items.

60. First, the Plaintiff's home address.

61. Second, the Plaintiff's home phone number.

62. Finally, the Plaintiff's place of employment.

63. If a debt collector, such as the Defendant, already has the three items of location information, then it is illegal to contact a third party.

64. Defendant had Plaintiff's location information.

65. The concept of abusive debt collection by contacting third parties is to contact the third parties and let them know that a debt is owed or otherwise illegally hurting Plaintiff through discussions with third parties.

66. This has a terrifying impact on the consumer when the consumer realizes that this voice on a phone, the collector, can invade the consumer's privacy by illegal third party contacts.

67. Even when collectors don't reveal the debt to third parties, it is still illegal to ask third parties to pass along a message to the consumer.

68. Consumers who receive messages from third parties, called by the collector, know that the collector is speaking with third parties.

69. In the present case, Defendant contacted Plaintiff's mother, sister-in-law, co-workers, and others.

70. The FDCPA specifically prohibits this type of abusive conduct because the danger of harm and invasions of privacy is very high when third parties are brought into the debt collection process.

71. Debt collectors, such as Defendant, will excuse this type of behavior.

72. They will justify it with two words.

73. "It works."

74. Defendant believes that the ends justify the means.

75. In the present case the Defendant has congratulated itself for squeezing this money out of Plaintiff by contacting third parties and the other wrongful acts committed against Plaintiff.

76. The fact that Plaintiff paid the money is exactly why this is the most popular form of abusive debt collection practice by debt collectors.

### Refusal to Give Proper Disclosures to Plaintiff

77. Defendant refused to give all required disclosures.

9

## Other Factual Allegations

78. Defendant Admin Recovery misrepresented the debt and its abilities to collect the debt, including its ability to repossess the mattress that Plaintiff slept on in her house.

79. Defendant Admin Recovery knew at all times that it had no legal right to go into Plaintiff's house and take her mattress.

80. Defendant Admin Recovery knew at all times that it had no right under the contract giving rise to the debt to go into Plaintiff's house and repossess the mattress.

81. Defendant Admin Recovery knew at all times that it had no intention, or ability, to take Plaintiff's mattress out of Plaintiff's home, but yet Defendant Admin Recovery still threatened to do so.

82. Defendant Admin Recovery had an overall plan and scheme to use virtually all forms of known harassment and other illegal conduct to bring to bear upon Plaintiff such intense pressure and pain to force Plaintiff to pay this debt.

83. To this day, Defendant Admin Recovery has not apologized to Plaintiff verbally or in writing or by its actions.

84. The campaign of harassment and other illegal conduct against Plaintiff was consistent with the Defendant's policies and procedures in how to treat Alabama consumers as well as consumers across the country.

## SUMMARY

85. All of the above-described collection communications made to third parties by Defendant and collection agents of Defendant were made in violation of numerous and multiple provisions of the FDCPA.

86. The above-detailed conduct by the Defendant of harassing Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, as well as an invasion of Plaintiff's privacy by an intrusion upon seclusion and by revelation of private financial facts and resulted in actual damages to the Plaintiff.

87. The collection calls by Defendant and its agents caused Plaintiff enormous stress and anguish as a result of these calls.

88. The Defendant's misconduct was designed to harm the Plaintiff as Defendant acted with full knowledge of the damage this type of invasion of privacy will cause.

89. Defendant was successful in its plan, scheme, design, and did in fact cause severe damages to Plaintiff.

90. The volume and type of collection calls and activities were harassing as the intent and motive behind them was to harass Plaintiff into paying Defendant Admin Recovery.

91. Defendant's contact with third parties was an invasion of Plaintiff's privacy and right to financial privacy.

92. Defendant's repeated attempts to collect this debt from Plaintiff and refusal to stop violating the law and to stop calling third parties was an invasion of Plaintiff's privacy and Plaintiff's right to be left alone.

93. Defendant's illegal abusive collection communications as more fully described above were the direct and proximate cause of severe emotional distress on the part of Plaintiff and caused Plaintiff unnecessary distress.

94. Plaintiff has suffered actual damages as a result of these illegal collection communications by Defendant in the form of anger, anxiety, emotional distress, fear, frustration, damage to reputation, upset, humiliation, embarrassment, amongst other negative emotions, physical injuries and symptoms, as well as suffering from unjustified and abusive invasions of personal privacy, and loss of money which was due to the illegal conduct of Defendant.

## RESPONDEAT SUPERIOR LIABILITY

95. The acts and omissions of Defendant's agents who communicated with Plaintiff and others as more further described herein, were committed within the line and scope of their agency relationship with their principal Defendant Admin Recovery.

96. The acts and omissions by these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Admin Recovery in collecting consumer debts.

97. By committing these acts and omissions against Plaintiff, these other debt collectors were motivated to benefit their principal the Defendant.

98. Defendant is therefore liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional, reckless, and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Alabama tort law, in their attempts to collect this debt from Plaintiff.

**NEGLIGENT AND WANTON HIRING AND SUPERVISION**

99. Defendant negligently and/or wantonly hired, retained, or supervised incompetent debt collectors and is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

**CAUSES OF ACTION**

**COUNT I.**

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
15 U.S.C. § 1692 et seq.**

100. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

101. Defendant Admin Recovery is a debt collector under the FDCPA.

102. The acts and omissions of Defendant and its agents constitute numerous and multiple violations of the FDCPA with respect to the Plaintiff, including but not limited to: 15 U.S.C. §§ 1692b(1); 1692b(2); 1692b(3); 1692c(b); 1692d; 1692d(5); 1692d(6); 1692e; 1692e(2); 1692e(5); 1692e(8); 1692e(10); 1692e(11); 1692e(14); 1692f; 1692f(1); 1692f(6); and 1692g.

103. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual and compensatory damages, statutory damages, and reasonable attorney's fees and costs from Defendant.

## COUNT II.

## INVASION OF PRIVACY

104. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

105. State law recognizes Plaintiff's right to be free from invasions of privacy and Defendant violated state law as described in this Complaint.

106. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

107. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

108. Defendant and/or its agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the privacy, solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

109. Defendant also intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by making illegal contact about this debt to third parties, and thereby invaded Plaintiff's right to financial privacy.

110. Defendant and its agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the

course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

111. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

112. The conduct of this Defendant and its agents, in engaging in the above-described illegal collection conduct against Plaintiff, exceeds the bounds of reasonableness and resulted in multiple intrusions and invasions of privacy by this Defendant which occurred in a way that would be highly offensive to a reasonable person in that position.

113. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant.

114. All acts of Defendant and its agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Defendant is subject to punitive damages.

## COUNT III.

### NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

115. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

116. Defendant negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to

16

violate the law as was done to Plaintiff, and is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## COUNT IV

## NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

117. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

118. Defendant had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

119. Defendant had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff.

120. Defendant acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

121. Defendant violated all of the duties Defendant had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

122. It was foreseeable, and Defendant did in fact foresee it, the actions of Defendant would lead and did lead to the exact type of harm suffered by Plaintiff.

123. Defendant acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

124. Defendant invaded the privacy of Plaintiff as set forth in Alabama law.

125. Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint.

126. As a result of this conduct, action, and inaction of Defendant, Plaintiff has suffered damages as set forth in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendant Admin Recovery for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $75,000.00), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

*[signature]*

John G. Watts (ASB-5819-T82J)
M. Stan Herring (ASB-1074-N72M)
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com

**Attorneys for Plaintiff**

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

*[signature]*

**Attorney for Plaintiff**

**Serve defendant via certified mail at the following address:**

Admin Recovery, LLC
c/o Incorp Services, Inc.
2094 Myrtlewood Drive
Montgomery, Alabama 36111